RECEIVED

ASP/2010R00169

JAN 17 2013

AT 8:30_____
WILLIAM T. WALSH, CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

13-38(PGS)

UNITED STATES OF AMERICA                 :    Criminal No.
                                          :
                                          :    18 U.S.C. § 1349
            v.                            :
                                          :
                                          :
AKPESIRI OMONUWA,                         :    I N D I C T M E N T
     a/k/a "Anthonio Omonuwa,"            :
     a/k/a "Anderson Omonuwa,"            :
     a/k/a "Abraham Omonuwa,"             :
     a/k/a "Toronto,"                     :
                                          :
LONDON AKPANOKO,                          :
     a/k/a "Doctor Fred,"                 :
                                          :
AMAECHI ANTWAN AHUAMA,                    :
     a/k/a "Tony," and                    :
                                          :
EKENE CHUKWURE                            :

INDICTMENT

The Grand Jury in and for the District of New Jersey,

sitting at Newark, charges:

18 U.S.C. § 1349
(Conspiracy to Commit Wire Fraud)

BACKGROUND

1.    Between in or around February 2007 through in or around

October 2012, the defendants named in this Indictment worked

together in an effort to steal millions of dollars.  To do so,

the defendants and other known and unknown co-conspirators in

Nigeria and the United States (collectively, the

"Co-Conspirators") fraudulently induced victims to pay more than

approximately $3 million in fees to secure the payment of

non-existent funds or assets (the "Advance Fee Fraud").

2.    As part of the Advance Fee Fraud, the Co-Conspirators falsely promised a transfer of funds or assets to the victim in order to induce the victims to pay purported fees, taxes, and other costs to effectuate the transfer.  The victims were instructed to transfer payment of these purported fees either to bank accounts controlled by the Co-Conspirators or directly to certain Co-Conspirators through money transfer services such as Western Union.

3.    At various times relevant to this Indictment:

       a.    Defendant AKPESIRI OMONUWA, a/k/a "Anthonio Omonuwa," a/k/a "Anderson Omonuwa," a/k/a "Abraham Omonuwa," a/k/a "Toronto," resided in or near Atlanta, Georgia.

       b.    Defendant LONDON AKPANOKO, a/k/a "Doctor Fred," resided in or near Atlanta, Georgia.

       c.    Defendant AMAECHI ANTWAN AHUAMA, a/k/a "Tony," resided in or near Atlanta, Georgia.

       d.    Defendant EKENE CHUKWURE resided in or near Atlanta, Georgia.

       e.    Victim L.B. resided in New Jersey.

       f.    Victim B.K. resided in Georgia.

       g.    Victim B.M. resided in Kentucky.

<u>THE CONSPIRACY</u>

4.    Between in or around February 2007 and in or around

2

October 2012, in the District of New Jersey and elsewhere, defendants

AKPESIRI OMONUWA,
a/k/a "Anthonio Omonuwa,"
a/k/a "Anderson Omonuwa,"
a/k/a "Abraham Omonuwa,"
a/k/a "Toronto,"
LONDON AKPANOKO,
a/k/a "Doctor Fred,"
AMAECHI ANTWAN AHUAMA,
a/k/a "Tony," and
EKENE CHUKWURE,

did knowingly and intentionally conspire and agree with each other and others to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice would affect financial institutions, and, for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

3

## OBJECT OF THE CONSPIRACY

5.    It was the object of the conspiracy for the defendants and others to steal money from victims, in the form of fraudulent fees and costs, by fraudulently promising the future transfer of non-existent funds or assets to the victims.

## MANNER AND MEANS OF THE CONSPIRACY

### The "Catchers"

6.    It was part of the conspiracy that certain Co-Conspirators, the "Catchers," primarily operated overseas and were tasked with identifying potential victims of the Advance Fee Fraud.

7.    It was further part of the conspiracy that the Catchers sent emails out in mass quantity to various email addresses.  The emails typically indicated that the recipient was owed some money from overseas, for example an inheritance, and requested that the recipient respond in order to commence the process of transferring the money to the recipient.

8.    It was further part of the conspiracy that once a recipient responded to one of the Catcher's emails, the recipient was identified as a potential victim of the Advance Fee Fraud and his or her contact information was then provided to a "Handler" in the United States who would then contact the recipient in furtherance of the Advanced Fee Fraud.

4

The "Handlers"

9.   It was further part of the conspiracy that certain Co-Conspirators (the "Handlers"), including defendants OMONUWA, AKPANAKO, and CHUKWURE, primarily operated in the United States, and contacted the victims by email, phone, and sometimes in person, in furtherance of the Advance Fee Fraud.  After receiving contact information for a potential victim identified by the Catchers, the Handlers fraudulently induced the victims to pay certain purported fees and costs in order to commence and/or effectuate the transfer of non-existent funds or assets.

10.   It was further part of the conspiracy that the Handlers often falsely indicated to their victims that the victim's name was on a United States beneficiary list, which was purportedly a list of beneficiaries who were approved by the United Nations to assist in the transfer of funds or assets from overseas to the United States.  Accordingly, some of the victims expected that they would be contacted by different individuals or entities attempting to send them funds or other valuable assets from various sources and for various reasons.  This cover allowed many of the Handlers to repeatedly victimize the same individual with different versions of an Advance Fee Fraud back story.

The "Account Holders"

11.   It was further part of the conspiracy that certain Co-Conspirators (the "Account Holders"), including defendants

5

OMONUWA and AHUAMA, opened and/or managed one or more bank accounts used to receive the fraudulently induced fee payments from the victims ("Drop Accounts").  When a Handler induced a victim to pay purported fees, the victim was directed to send the money to a Drop Account.

12.  It was further part of the conspiracy that the Handlers often created and used multiple Drop Accounts because the victims were induced to pay multiple fees, for different types of expenses, to multiple bank accounts.  Therefore, the Co-Conspirators used multiple Drop Accounts to create the illusion that the various fee payments were going to various legitimate fee originators.

Sharing Proceeds of the Fraud

13.  It was further part of the conspiracy that the fees extracted from the victims were split between the Catchers, the Handlers, and the Account Holders.  Some of the Account Holders simply held one or more Drop Accounts and provided the account information to the Handlers as needed for a cut of the defrauded funds.  Other Account Holders also acted as Handlers, and handled victims of their own.

## FRAUDULENT ACTIVITY

14.   In order to further the object of the conspiracy, defendants OMONUWA, AKPANOKO, AHUAMA, CHUKWERE, and others conducted the following fraudulent activity in the District of New Jersey and elsewhere:

<u>Victim L.B.</u>

a.   Defendant OMONUWA opened and controlled a Drop Account (the "OMONUWA Drop Account") in or around October 2009 to be used as a repository to receive fraudulently induced fees and costs paid by the victims in furtherance of the Advance Fee Fraud.

b.   Various Handlers contacted L.B. from as early as in or around February 2007, claiming to be interested in looking for a United States-based investment manager for a $20.5 million estate of a deceased American who died in South Africa.

c.   L.B. and other victims L.B. recruited were promised that the $20.5 million would be transferred to an account controlled by L.B. so that L.B. could invest those funds and keep a percentage of any profit.

d.   L.B. and the other victims L.B. recruited were induced to pay over $500,000 in various fictitious fees and costs, such as made-up account opening fees and other transfer fees, to effectuate the transfer of funds.  These payments typically were sent by L.B., or one of the other victims L.B. recruited, via wire transfer from their bank accounts in New Jersey to accounts

7

held outside of New Jersey.

e.   During the course of the conspiracy, L.B. and others sent over $90,000 in fraudulent fees to the OMONUWA Drop Account.

Victim B.K.

f.   Various Handlers contacted B.K. as early as in or around 2008, claiming to have funds and assets that they needed assistance in transferring to the United States.

g.   The Handlers told B.K. that they worked for the United Nations and that they had approximately 26 consignment boxes from Africa listing B.K. as a beneficiary.  B.K. was told that B.K. had to pay a fee in order to have the boxes released to B.K.

h.   B.K. met with a number of Handlers, including OMONUWA, regarding the consignment boxes supposedly in B.K.'s name.

i.   B.K. never received any money, and after every fee B.K. paid B.K. was confronted with yet another fee.  In total, B.K. paid approximately $300,000 - $400,000 in fees from 2007 to 2012.

j.   In or around early 2011, AKPANOKO, posing as "Doctor Fred" and purportedly working for the United Nations, visited B.K. at B.K.'s home to persuade B.K. and B.K.'s spouse to continue to pay fees associated with a transfer of funds and assets to them.

Victim B.M.

k.   A Handler posing as a "Kelvin Taylor" contacted B.M. as early as in or around March 2010 through a social networking

website.

l.   The Handler, posing as Taylor, claimed that he had won a large petroleum contract in West Africa and planned to oversee the execution of that contract.

m.   The Handler convinced B.M. to hold the alleged proceeds of the fictitious contract for Taylor in an account in the United States in exchange for a share of such proceeds. The Handler told B.M. that B.M. would be contacted by a diplomat named "Peter Harrison," who would assist with the transfer of funds from the contract to B.M.

n.   A Handler claiming to be Harrison contacted B.M. and directed B.M. to pay various fees in connection with the transfer.

o.   During the course of the conspiracy, CHUKWURE sent holiday and greeting cards to B.M. signed as Peter Harrison.

p.   B.M. never received any funds, but paid over approximately $300,000 in fees to the Co-Conspirators.

q.   AHUAMA controlled a Drop Account in the name "Cell Phone Unlimited LLC" (the "Cell Phone Unlimited Account"), which was widely used by the Co-Conspirators as a Drop Account and was used to receive certain fraudulently induced payments from B.M.

r.   B.M. and others sent over $1.6 million to the Cell Phone Unlimited Account at the request of various Handlers.

In violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

1.   The allegations contained in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.   Upon conviction of the offense in violation of Title 18, United States Code, Section 1349 set forth in this Indictment, the defendants

AKPESIRI OMONUWA,
a/k/a "Anthonio Omonuwa,"
a/k/a "Anderson Omonuwa,"
a/k/a "Abraham Omonuwa,"
a/k/a "Toronto,"
LONDON AKPANOKO,
a/k/a "Doctor Fred,"
AMAECHI ANTWAN AHUAMA,
a/k/a "Tony," and
EKENE CHUKWURE,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property which constitutes or is derived from proceeds traceable to such violation.

3.   If any of the property described above, as a result of any act or omission of a defendant:

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a
        third party;

11

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be

divided without difficulty,

the United States of America shall be entitled to forfeiture of

substitute property pursuant to Title 21, United States Code,

Section 853(p), as incorporated by Title 28, United States Code,

Section 2461(c).


    All pursuant to Title 28, United States Code, Section

2461(c).


A TRUE BILL


PAUL J. FISHMAN
United States Attorney

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED
2013 JAN 17 PM 6 52

CASE NUMBER: 13-_____

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

AKPESIRI OMONUWA,
a/k/a "Anthonio Omonuwa,"
a/k/a "Anderson Omonuwa,"
a/k/a "Abraham Omonuwa,"
a/k/a "Toronto,"
LONDON AKPANOKO,
a/k/a "Doctor Fred,"
AMAECHI ANTWAN AHUAMA,
a/k/a "Tony," and
EKENE CHUKWURE

# INDICTMENT FOR
18 U.S.C. § 1349

A True Bill,

_____
Foreperson

PAUL J. FISHMAN
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

ANDREW S. PAK
*ASSISTANT U.S. ATTORNEY*
*(973) 645-3976*